IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
March 4, 2025 Session

**STATE OF TENNESSEE v. CHARLES JORDAN, II**

**Appeal from the Circuit Court for Dyer County**
**No. 23-CR-83        Mark L. Hayes, Judge**

_____

**No. W2024-01178-CCA-R3-CD**

_____

The Defendant, Charles Jordan, II, pled guilty in the Dyer County Circuit Court to possession of a firearm after having been convicted of a felony crime of violence and possession of more than one-half ounce of marijuana with intent to sell or deliver. Pursuant to the plea agreement, he was to receive an effective ten-year sentence with the trial court to determine the manner of service. After a sentencing hearing, the trial court ordered that he serve the sentence in confinement. On appeal, the Defendant claims that the trial court erred by denying his request for alternative sentencing. Based on our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and MATTHEW J. WILSON, JJ., joined.

Margaret-Bailey Turner, Qualified Law Student, and Mitchell A. Raines (on appeal), Assistant Public Defender – Appellate Division, Tennessee District Public Defenders Conference, Franklin, Tennessee, and Martin Howie (at trial), Dyersburg, Tennessee, for the appellant, Charles Jordan, II.

Jonathan Skrmetti, Attorney General and Reporter; J. Katie Neff, Assistant Attorney General; Danny Goodman, Jr., District Attorney General; and Laura E. Clements, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

In April 2023, the Dyer County Grand Jury returned a ten-count indictment, charging the Defendant with four counts of possession of a firearm after having been

convicted of a felony crime of violence, four counts of aggravated assault with a deadly weapon, one count of possession of a firearm during the commission of a dangerous felony, and one count of possession of more than one-half ounce of marijuana with intent to sell or deliver. In March 2024, the Defendant entered best interest pleas to one count of possession of a firearm after having been convicted of a felony crime of violence, a Class B felony, and the single count of possession of more than one-half ounce of marijuana with intent to sell or deliver, a Class E felony. Pursuant to the plea agreement, he received consecutive eight- and two-year sentences, respectively, and the trial court was to determine the manner of service of the effective ten-year sentence. In exchange for the Defendant's pleas, the State dismissed the remaining charges.

At the guilty plea hearing, the State advised the trial court as follows:

[The Defendant] is going to enter into a plea to Count 1 and Count 10. The facts that would be presented at trial would be that on or about December the 23rd of 2022, officers responded to an Agg Assault in progress. When officers arrived at the residence they observed [the Defendant] in the doorway with a shotgun propped up against the door.

Officers then made entry into the home and located that shotgun as well as a backpack containing 152 grams of marijuana and weapons.

This is going to be a best interest plea. Count 1 is a B Felony. He is a Range II Offender. That carries a penalty of 12 to 20 years. We've agreed upon a plea of eight years at Range I with judicial sentencing regarding method of confinement.

With respect to Count 10, that's Possession of Schedule VI in an amount over half an ounce. He is Range II, which would [be] a penalty of two to four years. We've agreed to a plea of two years at Range II. These would run consecutive for a ten year sentence. And, the reason for this specific plea is that Aggravated Assault involves the girlfriend or ex-girlfriend of the defendant. She is back here in the courtroom today and she was uncooperative, as well as the other victim, as far as prosecuting in that case.

On July 2, 2024, the trial court held a sentencing hearing. The State did not present any witnesses but introduced into evidence a presentence report prepared by Westate

- 2 -

Corrections Network.[1]  According to the report, the Defendant dropped out of high school after the eleventh grade but obtained his GED while incarcerated.  The employment section of the report showed that when the report was prepared, the Defendant was working at two restaurants, Jack's Family Restaurant and The Blacksmith, and that he previously was employed at Burger King and Huddle House.  The health section of the report showed that the Defendant had a history of drug and alcohol abuse and that he currently was using drugs.  He told the Westate investigating officer that he began using marijuana when he was seventeen years old and that he last used marijuana on April 19, 2024.  The officer recommended in the report that the Defendant receive drug and alcohol treatment and random drug screens and concluded that he was a suitable candidate for community corrections.  The Defendant's criminal history in the report consisted of five felonies:  two in March 2015 for possession of Schedule VI drugs, one in March 2015 for possession of a weapon by a convicted felon, and two in March 2005 for aggravated burglary.  His criminal history consisted of twenty-four misdemeanors committed from 2004 to 2022, including numerous drug and traffic offenses and a conviction of domestic assault.  Many of the sentences for his felony and misdemeanor convictions involved probation or community corrections.  The Defendant's Strong-R assessment classified him as a "high violent" risk to reoffend.

The Defendant testified that he was thirty-eight years old, that he was married but separated from his wife, and that he did not have any children.  He said that he lived with his father or aunt in Dyersburg when he was not staying in a motel and that he would reside with his aunt if granted probation.  For a brief time, the Defendant worked at Jack's Family Restaurant and The Blacksmith simultaneously; at the time of the sentencing hearing, though, he was only working at Jack's and had been employed there for more than three weeks.  The Defendant explained that he worked at The Blacksmith about three years but that he began working full time at Jack's when the amount of work at The Blacksmith decreased.  The Defendant said that he had experience in cooking and food preparation, that he loved to cook, and that he previously worked at Burger King, McDonald's, Huddle House, Waffle House, and Shoney's.

The Defendant acknowledged that his criminal history was "lengthy" and included felony convictions.  However, his last felony conviction occurred nine years earlier in 2015.  The Defendant said that he had a history of alcohol and drug use, particularly marijuana, and that he recently stopped using marijuana.  The Defendant stated, "With me not being on any kind of probation or nothing right now, I ain't going to tell you, sir, that I didn't enjoy my life.  But, you know, I can quit that.  That's not a concern."  He said that

---

[1] The Tennessee Department of Correction also prepared a presentence report.  The State did not introduce the report into evidence, but the report, including the attached Strong-R assessment, is in the technical record.

if the trial court granted probation and ordered drug testing and inpatient or outpatient treatment, he would abide by those conditions because he did not want to go to jail. Defense counsel asked if the Defendant had his own transportation, and he said no. He said, though, that his family drove him places and that he would be able to get to work and meet with his probation officer. The Defendant said that his parents and aunt were in the courtroom, that he was a member of First Assembly of God, and that he performed volunteer work in his community.

On cross-examination, the Defendant acknowledged that he last smoked marijuana on April 19, 2024. His father, who made him "do right," initially was not aware of his marijuana use. However, the Defendant "came out and told him." The Defendant told his father that "with me not being on probation I have enjoyed myself," and the Defendant's father told him to stop using marijuana. The Defendant said he last used drugs two or three weeks before the sentencing hearing. The State asked if he could pass a drug screen, and he answered, "It would be -- if anything in my system, it [would] be weed. That's all, you know." He acknowledged that marijuana was illegal in Tennessee and said that he purchased the drug from a medical dispensary in Missouri that was only fifteen or thirty minutes from Dyersburg.

Jessica Manuel testified that she had been employed by Jack's Family Restaurant in Dyersburg for three years and that she was a chef manager and the Defendant's supervisor. The Defendant had been working at the restaurant as a cook for three to four weeks. Ms. Manuel said he was punctual, worked "double shifts" if asked, and was a "great" employee. The Defendant had not missed a day of work, and the restaurant "really need[ed]" him because it was understaffed. On cross-examination, Ms. Manuel testified that she had only known the Defendant since he started working at the restaurant.

At the conclusion of the hearing, defense counsel requested that the trial court place the Defendant on full probation or community corrections, noting that the Westate investigating officer considered him to be a suitable candidate for community corrections. Defense counsel stated that although the Defendant's prior criminal history was lengthy, "[h]is last felony conviction was nine years ago, and it was a marijuana conviction."

The State argued that alternative sentencing was not appropriate because while the Defendant pled guilty to only one weapons charge in this case, the police found four weapons in his home. The State also argued that alternative sentencing was inappropriate because the Defendant testified that he used drugs just three weeks before the sentencing hearing and because he did not have a permanent residence. The State urged the trial court not to give credence to Ms. Manuel's testimony because the Defendant had been working at Jack's only three weeks. Finally, the State argued that full confinement was necessary to protect society by restraining a defendant who has a long history of criminal conduct

- 4 -

and that confinement was necessary to avoid depreciating the seriousness of the offense, reminding the trial court that the Defendant had five prior felonies, two of which were violent felonies, and that he had a previous conviction for being a felon in possession of a firearm.

The trial court stated that it had considered the evidence presented at the sentencing hearing, the presentence report and the validated risk and needs assessment, the principles of sentencing, the arguments of counsel as to sentencing alternatives, the nature and characteristics of the criminal conduct involved, mitigating and enhancement factors, the statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, and the Defendant's potential for rehabilitation or treatment. The court found that enhancement factor (1), "[t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range," applied to the Defendant's convictions. *See* Tenn. Code Ann. § 40-35-114(1). The trial court noted that the Defendant's criminal activity spanned twenty years and five counties and stated, "That's pretty significant for this court." The trial court found that mitigating factor (1), "[t]he defendant's criminal conduct neither caused nor threatened serious bodily injury," also was applicable to his convictions. *See* Tenn. Code Ann. § 40-35-113(1).

The trial court found that the Defendant had a long history of criminal conduct, that confinement was necessary to avoid depreciating the seriousness of the offense, and that measures less restrictive than confinement had frequently or recently been applied unsuccessfully to the Defendant. In considering the Defendant's potential for rehabilitation, the trial court noted that he admitted to using marijuana recently, that a significant number of his prior convictions involved the use or possession of controlled substances, and that at least fourteen of his prior convictions involved some form of supervised release. Referring again to the Defendant's extensive criminal history, the trial court concluded that his potential for rehabilitation was poor. The trial court stated that the Defendant was a "hard worker" and had a "strong work ethic," which weighed in his favor, but that "that alone is not going to get [him] to a place where he is not going to commit criminal offenses." Accordingly, the trial court ordered that he serve his effective ten-year sentence in confinement.

## ANALYSIS

On appeal, the Defendant claims that the trial court erred by denying his request for alternative sentencing. First, he contends that the trial court gave "just lip service" to the principles and purposes of sentencing. In particular, he asserts that the trial court did not make sufficient findings regarding statistical information from the Administrative Office of the Courts. He also takes issue with statements made by the trial court regarding his

permanent residence, employment history, and transportation; claims the trial court gave too much weight to his criminal history; and failed to give proper consideration to his potential for rehabilitation because he has strong family support, maintains steady employment, was found to be a suitable candidate for community corrections in his Strong-R assessment, is willing to participate in inpatient and outpatient rehabilitation programs, and was never offered rehabilitation as a condition of previous alternative sentences. The State argues that the trial court properly denied the Defendant's request for alternative sentencing. We agree with the State.

This court reviews the length, range, and manner of service of a sentence imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012); *see State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the *Bise* standard to alternative sentencing). In determining the defendant's sentence, the trial court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the defendant in his own behalf; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* Tenn. Code Ann. § 40-35-210(b); *see also Bise*, 380 S.W.3d at 697-98. The trial court also must consider the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-103(5). The burden is on the Defendant to demonstrate the impropriety of his sentence. *See* Tenn. Code Ann. § 40-35-401, Sent'g Comm'n Cmts.

Regarding alternative sentencing for a felony, a defendant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. *See* Tenn. Code Ann. § 40-35-303(a). Moreover, a defendant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. *See* Tenn. Code Ann. § 40-35-102(6). In determining if incarceration is appropriate in a given case, a trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or
recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1). A defendant with a long history of criminal conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. Tenn. Code Ann. § 40-35-102(5).

Initially, we note that because the Defendant pled guilty to a Class B felony in count one and was sentenced as a multiple offender in count two, he is not presumed to be a favorable candidate for alternative sentencing for either of his convictions. Regarding his first claim that the trial court failed to address the sentencing factors properly, "*Bise* specifically requires trial courts to articulate the reasons for the sentence in accordance with the purposes and principles of sentencing in order for the abuse of discretion standard with a presumption of reasonableness to apply on appeal." *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013). "[M]ore than just lip service must be paid to the purposes and principles of sentencing in order to maintain the presumption." *State v. Jackson*, No. W2021-00208-CCA-R3-CD, 2022 WL 370090, at *6 (Tenn. Crim. App. Feb. 8, 2022), *no perm. app. filed*. Here, the trial court's sentencing decision spans five pages of the transcript, and the court articulated its reasons for denying alternative sentencing which were in accordance with the purposes and principles of sentencing. The trial court listed the factors it considered and stated, "The Court's also reviewed statistical information provided by the Administrative Office of the Court as to sentencing practices for similar offenses in Tennessee there." Therefore, we find no merit to the Petitioner's claim that the trial court did not properly consider the required sentencing factors.

As to the Defendant's claim that the trial court made inaccurate statements, the Defendant takes issue with the following:

[The Defendant], as the State points out, has been employed for three weeks. That is since he entered his plea in this matter. He does not have a permanent residence and identified at least three different places where he periodically stays there. Does not have -- I don't think he said he had reliable transportation of any kind there.

While the trial court's statement about the Defendant's employment may have been incorrect, the trial court also described the Defendant as a hard worker and said that the Defendant had a strong work ethic. Thus, the record demonstrates that the trial court considered the Defendant's positive employment history in sentencing. As to the trial court's statement that the Defendant did not have a permanent residence, the Defendant testified that he lived with his father and aunt when he was not staying at a motel. On cross-examination, the State asked if he had his own, permanent residence, and he

answered no. Therefore, the trial court's statement was not incorrect. Similarly, the Defendant testified that he did not have a vehicle and that he depended on his family for transportation.

In any event, the Defendant acknowledges that he has an extensive criminal history. That history includes violent felonies and a previous conviction of being a felon in possession of a weapon. Moreover, the record supports the trial court's determination that the Defendant's potential for rehabilitation is poor. The trial court found that the Defendant has received the benefit of alternative sentencing fourteen times previously but that it has not stopped him from committing crimes. We agree. Moreover, it is particularly troubling that the thirty-eight-year-old Defendant has been using marijuana since he was seventeen years old but has never sought rehabilitation for his drug use and that he chose to "enjoy" his life by using drugs while awaiting sentencing in this case. Accordingly, the trial court did not abuse its discretion in declining to impose alternative sentencing.

## CONCLUSION

Upon review, we find no error and affirm the judgments of the trial court.

s/ John W. Campbell
JOHN W. CAMPBELL, SR., JUDGE